STATE OF NEBRASKA, APPELLEE, V. RONALD R. COX, APPELLANT.

437 N.W.2d 134

Filed March 17, 1989.    No. 88-280.

Lee A. Larsen, Assistant Sarpy County Public Defender, for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

SHANAHAN, J.

A Sarpy County District Court jury convicted Ronald R. Cox of child abuse, a Class IV felony under Neb. Rev. Stat. § 28-707 (Reissue 1985), and third degree assault, see Neb. Rev. Stat. § 28-310 (Reissue 1985), which, under the circumstances, constituted a Class I misdemeanor. Both convictions resulted from first and second degree burns on the feet of Christopher Ranne, the 3-year-old son of Cox's former fiance, Connie Ranne. Although Cox had been charged with first degree assault of Christopher Ranne based on head injuries to the child, the jury acquitted Cox on the first degree assault charge. Cox was sentenced to imprisonment in the Sarpy County jail. We mention the head injuries of Christopher Ranne only as background for the discovery of Christopher Ranne's burns.

## APPLICABLE STATUTES

Pertinent to the prosecution of Cox, § 28-707(1) defines the offense of child abuse: "A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be: (a) Placed in a situation that endangers his or her life or health; or (b) Cruelly confined or cruelly punished . . . ."

Under § 28-310(1)(a), a person commits the offense of assault in the third degree if he or she "[i]ntentionally, knowingly, or recklessly causes bodily injury to another person."

## BACKGROUND FOR THE CHARGES

In the months prior to August 5, 1987, Cox frequently stayed with Connie Ranne and her two children, 6-year-old Joseph and 3-year-old Christopher. Sometime in July of 1987, Christopher sustained "submersion burns," which were first and second degree burns caused when Cox disciplined Christopher by placing him in the bathtub and running hot water on the child's feet. These burns, however, were not discovered by law enforcement officials until August 5, 1987, when Christopher was taken to the hospital with serious head injuries.

On August 5, 1987, Cox, Christopher, and Joseph were in the

Ranne home. Cox periodically forced Christopher to eat in the bathroom because Christopher "didn't eat the way [Cox] wanted him to eat." Both children were eating in the bathroom when, for some undisclosed reason, Cox took Christopher downstairs and forced him to do pushups. According to Joseph, Christopher was crying during the pushups and Cox "was telling him [Christopher] to do his pushups as he told him, but he didn't do it right, so — and then he kept on spanking him if he wouldn't do it right." After the pushup incident, Cox carried Christopher back to the bathroom. Although Joseph believed that Christopher was asleep while carried by Cox, Christopher had actually suffered a "subdural hematoma," a "collection of blood between the skull or the bone of the head and the brain tissue itself."

According to Cox's version of the incident, Christopher's head injuries resulted from the child's fall in the bathtub on August 5, 1987. Cox testified that he had placed the two children in the bathtub and proceeded downstairs to study for classes. About 10 to 15 minutes later, Joseph called out that Christopher was hurt. When Cox responded to Joseph's call, he found Christopher lying faceup in water in the bathtub. Joseph told Cox that Christopher had fallen and hit his head. As he pulled Christopher from the tub, Cox discovered that Christopher was not breathing. Cox began to administer cardiopulmonary resuscitation and then decided to take Christopher to the hospital.

During Christopher's treatment at Midlands Community Hospital, hospital staff saw physical indications which led them to suspect that Christopher was a victim of child abuse. Tamara Field, a registered nurse at Midlands' intensive care unit, noticed that Christopher had "multiple bruises all over his body" and "burns on his feet, his heels." When Christopher's condition began to deteriorate rapidly, he was removed from Midlands hospital and flown by emergency helicopter to St. Joseph Hospital in Omaha.

On arrival at St. Joseph, hospital personnel attempted to ascertain how Christopher had sustained burns to his heels. Cox told hospital personnel that the burns to Christopher's feet were caused by a combination of ill-fitting shoes and the fact

that Christopher had walked barefoot on hot pavement. Cox's explanation about the burns was inconsistent with the nature or type of burns sustained by Christopher, inasmuch as the burns were anywhere from a week to a month old and were first and second degree burns, commencing on the bottom of Christopher's feet and continuing up the back of his heels.

Dr. Douglas White, chief resident of St. Joseph's department of family practice, diagnosed Christopher's injuries as "submersion burns," resulting when a child is dipped into hot water. In Dr. White's opinion, Christopher's injuries were submersion burns in view of the pattern of the burns, namely, similar burns on both heels with no sign of injury to the child's forefeet, a condition which indicated that Christopher's burns did not result from the child's stepping into a tub of hot water. While in St. Joseph, Christopher was treated for his head injury, but no treatment was prescribed for Christopher's burns.

Pursuant to a request by personnel at Midlands hospital, an investigator from the Sarpy County Sheriff's Department, Officer Steve Grabowski, investigated Christopher's injuries. When Grabowski asked Christopher how his feet became burned, Christopher answered: "Daddy had poured hot water on his feet." Later, Grabowski learned that Christopher, in using "Daddy," was referring to Cox, who was later arrested and charged with two counts of first degree assault and one count of child abuse.

## THE PRELIMINARY HEARING

In the county court charges against Cox, "Count #3," later designated as "Count III" in the information, contained the assault charge based on the burns to Christopher's feet. After a preliminary hearing in the county court, Cox was bound over to the district court for trial on the child abuse charge and the assault charge based on Christopher Ranne's head injuries. The county court found that there was insufficient evidence to bind over Cox for trial on the assault charge for burns to Christopher's feet and purported to "dismiss Count #3." In its information filed in the district court, the State charged Cox with child abuse and both assault charges. In view of the county court's refusal to bind over Cox on the assault charge reflected

in count III of the information, the district court held a preliminary hearing on the burn-related assault charge (count III) and found sufficient evidence to require that Cox stand trial on the assault charge alleged in count III of the information. The district court's "Journal Entry" contains: "Preliminary hearing held on Count III of the Information. Now comes on for decision. The Court finds the evidence established . . . probable cause to hold the defendant for trial on Count III." Consequently, Cox was tried on all three counts, that is, the charge of child abuse and the two assault charges.

## ISSUES AT TRIAL

The cause of Christopher's burned feet is the crucial issue in Cox's convictions.

Cox maintained that Christopher had burned his feet at the end of July when Cox was preparing Christopher's bath and was interrupted by a phone call. As Cox was answering the phone, Christopher got into the bathtub and yelled, "Hot." When Cox returned to the bathroom, he saw Christopher standing "in the back of the tub on his heels." While removing Christopher from the tub, Cox saw that the child's feet were "red," but did not believe that Christopher was injured in the incident.

The prosecution claimed that Cox had poured hot water on Christopher's feet as a form of discipline. According to Joseph, Cox would "[g]ive [Christopher] hot water" if Christopher would not eat properly. As Joseph described the incident in which Christopher's feet were scalded, the water would "go into [his] brother's feet" while his brother was standing in the bathtub. Cox would let hot water run into the bathtub until Christopher swallowed his food. When hot water struck Christopher's feet, he would flee to the back of the tub, only to have Cox order him back into the running hot water at the front of the tub.

## IN CAMERA HEARING

When the prosecutor indicated that he intended to call Christopher Ranne as a witness, the court held an in camera hearing to determine whether 3-year-old Christopher was competent to be a witness in Cox's trial. As a result of the hearing, the court declared that Christopher was incompetent

to testify because "his attention span is so short that I really question whether he understands what the proceedings are about." When the court ruled that Christopher was not competent to testify, the prosecutor expressed his intention to have a witness accompany Christopher into the courtroom and identify the child for the jury. Although the prosecutor never requested a ruling for authorization of Christopher's presence in the courtroom, the judge indicated that Christopher's presence would be relevant information for the jury. On the basis of relevance, Cox's lawyer objected to Christopher's prospective appearance in the courtroom and identification for the jury. For Cox's appeal, we consider the court's action as authorization for Christopher's appearance before the jury.

## HEARSAY

On resumption of Cox's trial before the jury, Mary Drouillard, a registered nurse in the St. Joseph Hospital pediatric intensive care unit, testified regarding Christopher's burns. While Drouillard was testifying that she had spoken with Christopher on the night of his admission to the hospital, the following exchange occurred:

[Prosecutor:] And I'm talking now about the first night, the night of his admission.

[Drouillard:] Yes.

[Defense counsel:] Your Honor, we're going to object to any eliciting of any testimony of statements by any witness who is not present in court, hearsay.

THE COURT: Overruled.

[Prosecutor:] And can you tell us when you first had any kind of conversation, and maybe conversation is a little bit too elaborate, but whenever Christopher said anything to you that first night, can you tell me what he said to you?

[Drouillard:] On the first night admission, when he said to me?

[Prosecutor:] Sure, let's start there.

[Drouillard:] When we first set him in the bed he said that his feet hurt, and he proceeded to tell us what had happened to his feet.

[Prosecutor:] What did he tell you?

[Drouillard:] He said that his daddy poured hot water on his feet, but they were healing.

Later in the trial, Steve Grabowski, the investigator for the Sarpy County sheriff's office and a State's witness, testified without objection that he asked Christopher how the child's feet became burned, and Christopher, using "Daddy" to designate Cox, answered, "Daddy . . . poured hot water on [my] feet."

## CHRISTOPHER IN COURT

Connie Ranne, Christopher's mother, testified that Cox had threatened to pour hot water on Christopher to discipline him, but she never saw Cox carry out the threatened discipline. The prosecutor, without objection by defense counsel, asked Connie Ranne whether either of her children had accompanied her to court. Connie Ranne stated that Christopher had come with her to court and, at the prosecutor's request, pointed out Christopher in the courtroom.

## ASSIGNMENTS OF ERROR

Cox claims the district court committed reversible error in (1) ordering Cox to stand trial on count III of the information without a preliminary hearing; (2) receiving in evidence the out-of-court statement by Christopher Ranne, who was declared to be incompetent as a witness in Cox's trial, and (3) allowing the jury to see Christopher in court.

## COX'S PRELIMINARY HEARING

Cox does not contend that evidence is insufficient to establish that a felony had been committed and probable cause to believe that he had committed the offense. See Neb. Rev. Stat. § 29-506 (Reissue 1985) (felony charge and preliminary examination). Rather, Cox asserts that the district court erred "in having [Cox] stand trial on Count III which was not bound over by the County Court without preliminary hearing or finding in District Court." Although the county court found insufficient evidence to bind Cox over to the district court for trial on the assault charge eventually embodied in count III of the information, the record unmistakably and conclusively shows that Cox was given a preliminary hearing in the district court on count III, the burn-assault charge.

"It has long been the rule in this jurisdiction that the discharge of one accused of crime by an examining magistrate

following a preliminary hearing does not bar the refiling of the same or different charges before another magistrate." *State v. Rubek*, 220 Neb. 537, 539, 371 N.W.2d 115, 117 (1985). There is no prohibition, constitutional or otherwise, to a preliminary hearing in the district court on a felony charge alleged in an information, notwithstanding a county court's refusal to bind the defendant over to the district court for a trial after a preliminary hearing in the county court on the same felony charge subsequently filed in the district court. *State v. Rubek, supra.* Cox had a preliminary hearing in the district court. The assignment of error regarding a preliminary hearing is without merit.

HEARSAY STATEMENTS OF CHRISTOPHER RANNE

Cox next complains that the district court erred by admitting Drouillard's testimony containing Christopher Ranne's out-of-court statement regarding the cause of injuries to his feet, namely, "[D]addy poured hot water on [my] feet." Defense counsel's objection to "any eliciting of any testimony of statements by any witness who is not present in court, hearsay," is apparently directed to Christopher's statement, admitted into evidence through Drouillard's testimony regarding Christopher's scalded feet.

To preserve a claimed error in admission of evidence, a litigant must make a timely objection, which specifies the ground of the objection to the offered evidence. Neb. Evid. R. 103(1)(a), Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1985); *State v. Roggenkamp*, 224 Neb. 914, 402 N.W.2d 682 (1987); *State v. Pointer*, 224 Neb. 892, 402 N.W.2d 268 (1987). If a party does not make a timely objection to evidence, the party waives the right on appeal to assert prejudicial error concerning the · evidence received without objection. *State v. Archbold*, 217 Neb. 345, 350 N.W.2d 500 (1984). Perhaps as prognostication of Neb. Evid. R. 103(1)(a), this court observed in *Havlicek v. State*, 101 Neb. 782, 784-85, 165 N.W. 251, 251-52 (1917):

It is the duty of counsel to make his objections so specific that the court may understand the point intended to be raised, and, unless prejudicially erroneous on the point presented, the admission of the evidence to which objection is offered will not be held prejudicially

erroneous for some reason which counsel did not suggest at the trial.

"Unless the objection to offered evidence be sufficiently specific to enlighten the trial court and enable it to pass upon the sufficiency of such objection and to observe the alleged harmful bearing of the evidence from the standpoint of the objector, no question can be presented therefrom in the court of appeal." 5 Jones, Commentaries on Law of Evidence, sec. 893.

Both timeliness and specificity of defense counsel's objection in Cox's case are, at best, questionable. In apparent anticipation of a hearsay response, counsel chose to object well in advance of the prosecutor's question to Drouillard, "What did he [Christopher] tell you?" Consequently, when defense counsel objected, there was no pending question calling for an answer containing hearsay. At the point of the objection, without inquiring into the content of Christopher's conversation with Drouillard, the prosecutor was evidentially establishing the existence of a conversation between Christopher and Drouillard and was in the process of introducing a foundation for prospective admission of the conversation's content as evidence. With respect to timeliness, just as some objections may be procedurally too late, some objections may be procedurally too early. Cox's hearsay objection was, therefore, premature. Furthermore, counsel phrased the objection in the broadest possible terms, "any testimony of statements by any witness . . . not present in court." Given the all-inclusive nature and universality of counsel's objection, the district court had no choice but to overrule the objection. Under the Nebraska Evidence Rules, the hearsay rule does not require exclusion of all out-of-court or extrajudicial statements. See Neb. Evid. R. 803, Neb. Rev. Stat. § 27-803 (Reissue 1985). An extrajudicial statement must be examined to determine whether (1) it is hearsay defined by Neb. Evid. R. 801, Neb. Rev. Stat. § 27-801 (Reissue 1985), and (2) if hearsay, whether any exception to the hearsay rule authorizes admission of the statement into evidence. See, Neb. Evid. R. 803; Neb. Evid. R. 804, Neb. Rev. Stat. § 27-804 (Reissue 1985). To afford a trial court a fair opportunity to examine an

out-of-court or extrajudicial statement in the light of the Nebraska Evidence Rules, counsel must direct a hearsay objection to the statement to be excluded pursuant to the objection. Failure to direct a hearsay objection to a particular extrajudicial statement, offered as evidence, may result in a waiver of the right on appeal to assert prejudicial error. See, *State v. Roggenkamp, supra; State v. Archbold, supra.*

However, we need not decide whether Cox waived his right to claim error regarding Christopher's statement contained in Drouillard's testimony. In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Olsan, ante* p. 214, 436 N.W.2d 128 (1989). See, also, *State v. Watkins*, 227 Neb. 677, 419 N.W.2d 660 (1988).

"Harmless error exists in a jury trial of a criminal case when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury in a verdict adverse to a substantial right of the defendant." *State v. Watkins, supra* at 686, 419 N.W.2d at 666.

Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact. *State v. Guy*, 227 Neb. 610, 419 N.W.2d 152 (1988) (police officer's testimony containing a victim's statement to the officer was erroneously admitted into evidence over the defendant's objection; however, the error was harmless beyond a reasonable doubt because other witnesses testified without objection regarding the same details related in the officer's testimony containing hearsay). See, also, *State v. Thierstein*, 220 Neb. 766, 371 N.W.2d 746 (1985).

Cox did not object to Officer Grabowski's testimony, which coincided with the content of Drouillard's testimony concerning Christopher Ranne's response to inquiries about the cause of his burns, namely, "Daddy had poured hot water on [my] feet." Furthermore, Joseph Ranne, Christopher's brother, testified in detail regarding Cox's disciplinary practice of

placing Christopher in the bathtub and running hot water on Christopher's feet. If Christopher's extrajudicial statement is excluded by the hearsay rule, testimony from Joseph Ranne and Officer Grabowski rendered the admission of Drouillard's testimony, which contained Christopher's statement about the cause of his burns, error which was harmless beyond a reasonable doubt.

Cox also claims the district court erred in admitting hearsay during the testimony of witnesses in addition to Drouillard. Without an express reference to the statute, as far as we can gather, Cox relies on Neb. Rev. Stat. § 25-1141 (Reissue 1985), which provides:

> Where an objection has once been made to the admission of testimony and overruled by the court it shall be unnecessary to repeat the same objection to further testimony of the same nature by the same witness in order to save the error, if any, in the ruling of the court whereby such testimony was received.

If we assume that Cox is relying on § 25-1141 (perhaps an unwarranted assumption, since Cox did not mention the statute at trial and has not referred to the statute in his appellate brief), then there may be some meaning to Cox's casual comment in his brief: "The Court may note here that objection was not made by the defense counsel to the admission of this hearsay for defense counsel had a continuing hearsay objection." Brief for appellant at 6. In the preceding comment, "this hearsay" refers to various witnesses other than Drouillard and their testimony which Cox claims is hearsay. Certainly, we do note that defense counsel has made no objection regarding the evidence now questioned as hearsay. More important, we also note that Cox's assertion of a "continuing hearsay objection" is not correlated with any reference to the record which locates or reflects counsel's statement of such objection or ruling by the judge. Believing that absence of any reference to the record is an oversight of counsel, we have examined the nearly 1,000 pages in the four volumes of the bill of exceptions and are unable to locate the hearsay objection claimed by Cox, the objection which Cox asserts was granted a "continuing" status by the trial court. In order that assignments of error concerning the

admission or rejection of evidence may be considered, the Supreme Court requires that appropriate references be made to the specific evidence against which objection is urged. *State v. Copple*, 224 Neb. 672, 401 N.W.2d 141 (1987); *Pulliam v. State*, 167 Neb. 614, 94 N.W.2d 51 (1959). As the result of counsel's failure to direct our attention to a specific location in the record, reflecting a "continuing hearsay objection," and as a consequence of our inability to locate the claimed objection, notwithstanding our examination for such objection, we must conclude that there is no continuing hearsay objection by Cox. Even if one were to conclude that, during direct examination of Drouillard, defense counsel's objection attained the stature of a proper and continuing objection to hearsay, the exemption from an otherwise necessary objection, available under § 25-1141, applies to "further testimony of the same nature by the same witness." It would take a lot of legal legerdemain to transform the objection during Drouillard's testimony into an objection to testimony from other witnesses, some of whom testified 2 days after Drouillard had testified. Therefore, beyond Drouillard's testimony, we consider no witness' testimony in relation to the hearsay rule or any other rule for admissibility of evidence.

Cox's claimed error regarding hearsay is without merit.

## IDENTIFICATION AND PRESENCE OF CHRISTOPHER AT TRIAL

Finally, Cox claims reversible error in Connie Ranne's identification of Christopher during her testimony. After the in camera hearing and when trial resumed before the jury, Cox did not make any objection to Christopher's presence in the courtroom or Connie Ranne's in-court identification of Christopher. Cox's evidential complaint regarding the presence and identification of Christopher fails because Cox made no objection at the time of those occurrences.

When a court overrules a motion in limine to exclude evidence, the movant must object when the particular evidence, previously sought to be excluded by the motion, is offered during trial and cannot predicate error on the admission of evidence to which no objection was made when the evidence was adduced. *State v. Sailors*, 217 Neb. 693, 352 N.W.2d 860

(1984). Thus, by his failure to object, Cox waived any error predicated on Christopher's presence in the courtroom and Connie Ranne's in-court identification of Christopher.

We do not reach the substantive evidential questions raised in Cox's brief regarding the admissibility of Christopher's statement, nor do we express any view concerning the propriety of the in-court identification of Christopher, a child abuse victim who was not a witness in the trial. Cox has not presented a record on which we can reach those questions. Therefore, Cox's conviction is affirmed.

AFFIRMED.