STATE OF NEBRASKA, APPELLEE, V. ARDEN MESSERSMITH,
APPELLANT.

473 N.W.2d 83

Filed August 16, 1991.    No. 89-1398.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays for appellant.

Robert M. Spire, Attorney General, and Barry Waid for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

A jury in the district court for Lancaster County convicted Arden Messersmith of two felonies: theft by receiving stolen property valued at more than $300 but less than $1000, which is a violation of Neb. Rev. Stat. § 28-517 (Reissue 1989) and a Class IV felony, and intent to distribute or deliver amphetamine which was in Messersmith's possession, a Class III felony under Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1988).

## APPLICABLE STATUTES

Pertinent to Messersmith's prosecution is § 28-517, which provides: "A person commits theft if he receives, retains, or disposes of stolen movable property of another knowing that it has been stolen, or believing that it has been stolen, unless the property is received, retained, or disposed with intention to restore it to the owner." Under § 28-416(1), it is unlawful for "any person knowingly or intentionally: (a) To manufacture, distribute, deliver, dispense, or possess with intent to manufacture, distribute, deliver, or dispense a controlled substance."

## BASIS FOR MESSERSMITH'S CONVICTIONS

On January 18, 1989, Harold Strayer and Toby Stroh burglarized John Ballou's shed and stole numerous automobile parts from Ballou. Strayer and Stroh delivered most of the stolen auto parts to Messersmith in exchange for money and drugs packaged in small plastic baggies. Before Strayer and Stroh handed over the auto parts to Messersmith, they

informed him that the parts were stolen from Ballou. The next day, January 19, Strayer and Stroh returned to Messersmith's residence to install the stolen auto parts in Messersmith's car. On January 20, Stroh again returned to Messersmith's, where Stroh purchased amphetamine from him.

On January 22, police executed a search warrant at Messersmith's residence and found in Messersmith's bedroom closet a toolbox that contained a vial and five small plastic bags of a substance which, by later chemical analysis, was identified as amphetamine. Contents of another bag tested positive for methamphetamine. The officers also discovered a large plastic bag filled with many small self-sealing plastic bags, another plastic bag containing syringes, a sifter, and a metal funnel and scoop. A triple-beam balance scale and a box of powdered sugar were also found in Messersmith's closet, with a shotgun and a box of shotgun shells.

Police found other items in Messersmith's home, including a candy box containing two bags which had a later-identified amphetamine residue, $1,255 in cash located in Messersmith's wallet, lists of several individuals' names with dollar amounts written after the names, and a table of metric measurements for converting gram weight into ounces and pounds. From the home of Stroh's girl friend, police also retrieved the amphetamine that Stroh had purchased from Messersmith on January 20. Police arrested Messersmith on January 22, 1989. Among the charges filed against Messersmith were counts for the previously mentioned drug and theft offenses.

## MESSERSMITH'S MOTION IN LIMINE AND TRIAL

Before introduction of evidence at trial, Messersmith filed a motion in limine, based on Neb. Evid. R. 404(2) (admissibility of "other acts" evidence), Neb. Rev. Stat. § 27-404(2) (Reissue 1989), to preclude testimony from Strayer and Stroh concerning transactions and events involving Messersmith before January 22, 1989, when police found the controlled substances at Messersmith's residence. After an evidential hearing on Messersmith's motion outside the jury's presence, the trial court, pursuant to Neb. Evid. R. 104(1) (preliminary question of admissibility), Neb. Rev. Stat. § 27-104(1) (Reissue

1989), determined that testimony from Strayer and Stroh was admissible under Rule 404(2), but was subject to a cautionary instruction regarding the limited use of "other acts" evidence admitted under Rule 404(2).

At Messersmith's trial, Det. Sgt. Michael Garnett, a witness with special training and experience in investigating narcotics cases, testified that possession of controlled substances, with the presence of many small self-sealing plastic bags, indicates that the drugs were "probably being maintained for resale." According to Garnett, other items commonly used for repackaging and sale of controlled substances include accurate scales of the type found in Messersmith's closet; powdered sugar or other substances used to dilute the controlled substance "to make the quantity of drug that they have larger"; sifters, which are often used to mix the dilutant with the drug; and funnels and scoops that aid in transferring the drug into small plastic bags.

Over Messersmith's objection, Strayer and Stroh testified that they purchased controlled substances from Messersmith numerous times during January 1989 and that some of these transactions involved their delivery of stolen property to Messersmith in exchange for drugs. When Strayer and Stroh brought stolen property to Messersmith for the drugs, they told Messersmith that the articles delivered in the exchange were stolen. Immediately after conclusion of Strayer's testimony, the court instructed the jury that Strayer's testimony concerning prior drug transactions with Messersmith was "not admissible to prove the character of a person in order to show that that person acted in conformity with that character," but was received

> for the limited purpose of helping you to decide whether [Messersmith] had the knowledge required by Count I of the Information [theft charge] and in helping you . . . decide whether [Messersmith] had the intent required by Count II of the Information [drug charge]. You must consider that evidence for that limited purpose and for no other purpose.

The foregoing cautionary and restrictive instruction was repeated immediately after Stroh's testimony and, in a

substantially similar version, was included among the general instructions given to the jury at the conclusion of all evidence.

Over Messersmith's relevance objections, the district court admitted into evidence the shotgun and box of shells which were found in Messersmith's closet and photographs which showed myriad auto parts in the kitchen, dining, and living room areas of Messersmith's home, although none of the depicted items were claimed to be the stolen property which Messersmith received in exchange for drugs delivered to Strayer and Stroh. For instance, the depicted items included: a motorcycle in some state of assembly or disassembly, as the case may be, in Messersmith's dining room, with several motorcycle seats, a fire extinguisher, and a deer's head wearing a straw hat; vehicle wheels with spokes, lying on the dining room floor, which was covered with several boxes of nondescript items; a large air compressor in the living room; assorted metal sanders, drills, gauges, and socket wrenches in Messersmith's kitchen; a mechanic's metal tool chest located in the kitchen; and a cutting torch with its tanks of oxygen and acetylene, also located in the kitchen. In conjunction with admission of the photographs, the court refused to give a limiting instruction, requested by Messersmith, that the photographs showed only the condition of the premises and did not tend to establish that the depicted items were stolen property. Ballou identified his various auto parts which had been incorporated into Messersmith's car and pointed out the distinctive features and approximate value of those parts, which were itemized on a handwritten list prepared by Ballou and received in evidence. Also, under court supervision, the jury collectively viewed Messersmith's car in conjunction with the evidence from Ballou.

During his case in chief, Messersmith disclaimed owning the toolbox which contained the amphetamine, methamphetamine, plastic bags, syringes, sifter, and metal funnel and scoop. Also, Messersmith denied that he knew the auto parts were stolen when he received those articles from Strayer and Stroh and further denied trading the auto parts for drugs received by Strayer and Stroh. Messersmith claimed the gun and shells found in his closet were owned by a coworker who left them in Messersmith's home while Messersmith

contemplated buying them.

During the instruction conference just before summation, Messersmith objected to instructions Nos. 2 and 4, which described the crime of theft by receiving stolen property, namely, "Arden Messersmith . . . did receive, retain, or dispose of stolen movable property of John Ballou, valued at more than $300 but less than $1,000, knowing or believing that it had been stolen." Messersmith contended that, because the State had been required to file a bill of particulars before trial for designation of stolen auto parts as the property involved in the theft charge, jury instructions, describing theft by receipt of stolen property, should specifically identify the property stolen. The court declined to specify the property included within "stolen movable property" used in its instructions. The jury returned a guilty verdict on both charges of drug possession and theft by receipt of stolen property.

## ASSIGNMENTS OF ERROR

Messersmith alleges 12 assignments of error which may be distilled into 4, namely, the district court erred in (1) admitting "uncharged misconduct" evidence consisting of Messersmith's previous drug transactions and exchanges of stolen property with Strayer and Stroh; (2) overruling Messersmith's relevance objections to the shotgun, shells, and photographs depicting auto parts which were not the subject of the theft charge; (3) refusing to give a limiting instruction regarding the photographic exhibits; and (4) failing to give an instruction which specified the items within "stolen movable property" used in instructions Nos. 2 and 4.

## "OTHER ACTS" EVIDENCE

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Neb. Evid. R. 404(2), § 27-404(2).

"Rule 404(2) of the Nebraska Evidence Rules is 'an inclusionary rule permitting the use of relevant, specific

acts for all purposes except to prove character of a person in order to show that such person acted in conformity with character. Thus, Rule 404(2) permits evidence of other acts if such acts are relevant for any purpose other than to show a defendant's propensity or disposition to commit the crime charged."

*State v. Clancy*, 224 Neb. 492, 497, 398 N.W.2d 710, 714-15 (1987). Accord, *State v. Stewart*, 219 Neb. 347, 363 N.W.2d 368 (1985); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

However, Rule 404(2) is subject to the overriding protection of Neb. Evid. R. 403, which provides for exclusion of otherwise relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Neb. Rev. Stat. § 27-403 (Reissue 1989). See, *State v. Clancy, supra*; *State v. Craig, supra*.

Messersmith's knowledge that the auto parts received from Strayer and Stroh were stolen and Messersmith's intent to deliver amphetamine were among elements which the State was required to prove beyond a reasonable doubt for Messersmith's convictions on the charged offenses. See §§ 28-517 and 28-416.

Strayer's and Stroh's testimony that they had stolen Ballou's auto parts and delivered those articles to Messersmith, after Strayer and Stroh had informed Messersmith that the parts were stolen, was relevant to show that Messersmith received property which he knew was stolen and to prove an element of the theft offense, namely, receipt of property known to have been stolen. Therefore, prior transactions involving Messersmith's acceptance of stolen property from Strayer and Stroh in an exchange for drugs were relevant and admissible under Rule 404(2) to establish Messersmith's knowledge that the property which was the subject of the present prosecution was, in fact, stolen.

Also, Messersmith's prior drug transactions with Strayer and Stroh were relevant and admissible under Rule 404(2). While Messersmith's possession of drugs is clearly shown, his prospective disposition of those drugs became quite important, since Messersmith was charged with the intent to deliver or

distribute drugs in his possession. Consequently, the manner in which Strayer and Stroh obtained drugs was important in the case against Messersmith. The prior drug transactions tended to show that Strayer and Stroh had obtained drugs from Messersmith with his knowledge and intentional transfer of drugs to Strayer and Stroh, a mutually deliberate transaction, rather than Strayer's and Stroh's obtaining the drugs without Messersmith's knowledge or without his voluntarily transferring the drugs into the possession of Strayer and Stroh as drug customers. Messersmith's presently intended and prospective distribution of drugs, through delivery in accord with a prior established format, might be inferred from the circumstances of his prior transactions. " 'Circumstantial evidence' means facts or circumstances, proved or known, from which existence or nonexistence of another fact may be logically inferred or deduced through a rational process." *State v. Jasper*, 237 Neb. 754, 763, 467 N.W.2d 855, 862 (1991). Accord, *State v. Twohig, ante* p. 92, 469 N.W.2d 344 (1991); *State v. Loveless*, 234 Neb. 463, 451 N.W.2d 692 (1990). "[C]ircumstantial evidence may support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession." *State v. Zitterkopf*, 236 Neb. 743, 748, 463 N.W.2d 616, 620 (1990). Therefore, the prior transactions, as an indication of Messersmith's present intent, were relevant and admissible under Rule 404(2).

Because "other acts" evidence under Rule 404(2) is subject to overriding protection from Rule 403, we must examine whether the probative value of Strayer's and Stroh's testimony is substantially outweighed by the danger of unfair prejudice or any other factors designated in Rule 403, such as confusion of issues, misleading the jury, or undue delay. " 'Probative value is a relative concept; the probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the ultimate issues of the case.' " *State v. Bostwick*, 222 Neb. 631, 639, 385 N.W.2d 906, 912 (1986) (quoting Dolan, *Rule 403: The Prejudice Rule in Evidence*, 49 S. Cal. L. Rev. 220 (1976)). Accord *State v.*

*Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990). "In the context of Neb. Evid. R. 403, 'unfair prejudice' means an undue tendency to suggest a decision on an improper basis." *State v. Lonnecker*, 237 Neb. 207, 210-11, 465 N.W.2d 737, 741 (1991).

Strayer's and Stroh's involvement in stolen property transactions with Messersmith, and their telling him that the property in the exchange was stolen, was closely related to one of the ultimate issues in the case—Messersmith's knowledge that the auto parts received from Strayer and Stroh on January 18 were, in fact, stolen property. Therefore, prior property exchanges, as related by Strayer and Stroh, were highly probative on the question of Messersmith's knowledge. In a similar manner, Messersmith's prior delivery of drugs to Strayer and Stroh on several occasions was probative of Messersmith's intent to deliver drugs found in his possession on January 22, 1989.

Also, the highly probative value of Messersmith's prior transactions with Strayer and Stroh was not outweighed by a danger of unfair prejudice or any other factor designated in Rule 403. There was no undue tendency to suggest a decision on an improper basis, especially in light of the district court's repeated instruction that expressly restricted the use of the "other acts" evidence to the jury's deciding whether Messersmith had the requisite knowledge and intent concerning the stolen property and controlled substance charges. See, Neb. Evid. R. 105, Neb. Rev. Stat. § 27-105 (Reissue 1989) (restrictive instruction on proper use of evidence which is admissible for one purpose, but not another). The limiting instruction in Messersmith's case minimized possible prejudice from Strayer's and Stroh's testimony.

Therefore, Strayer's and Stroh's testimony about prior stolen property and drug transactions involving Messersmith during January 1989 was properly admitted in Messersmith's trial.

## RELEVANCE OF SHOTGUN, SHELLS, AND PHOTOGRAPHS

Messersmith next argues that the shotgun and shells found in his bedroom closet, and the photographs depicting numerous

tools and auto parts which were not included in the theft charge against him, were irrelevant and, therefore, improperly admitted.

"Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401. "Evidence which is not relevant is not admissible." Neb. Evid. R. 402.

> "There are two components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is 'in issue,' that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law . . . .

> "The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. . . ."

*State v. Baltimore, supra* at 740, 463 N.W.2d at 812 (quoting McCormick on Evidence § 185 (E. Cleary 3d ed. 1984)). "To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided." *State v. Lonnecker, supra* at 210, 465 N.W.2d at 740-41. Accord *State v. Baltimore, supra.*

As previously mentioned, the main issues in Messersmith's case were his knowledge that the auto parts were stolen and his intent to deliver controlled substances found in his home. We cannot see how the shotgun and shells found in Messersmith's closet relate to, or tend to prove, essential elements of the charges against him. Cf. *State v. Lonnecker, supra.* Hence, the shotgun and shells lacked probative value, were irrelevant, and, therefore, were inadmissible. See Neb. Evid. R. 401 and 402.

Similarly, the photographs depicting auto parts which were not the subject of the theft charge against Messersmith were irrelevant to any element in either the theft or drug charge against Messersmith. Regarding the photographs, no witness

designated the depicted items as stolen property. The condition of the premises was not an issue and provided no information to help the jury to resolve any question placed before them. Consequently, the photographs were irrelevant and should have been excluded.

"In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt." *State v. Cox,* 231 Neb. 495, 504, 437 N.W.2d 134, 140 (1989). Accord, *State v. Lonnecker, supra*; *State v. Watkins,* 227 Neb. 677, 419 N.W.2d 660 (1988). "Erroneous admission of evidence is harmless error and does not require reversal if the evidence erroneously admitted is cumulative and other relevant evidence, properly admitted, or admitted without objection, supports the finding by the trier of fact." *State v. Cox, supra* at 504, 437 N.W.2d at 140. Accord *State v. Twohig, ante* p. 92, 469 N.W.2d 344 (1991). See, also, Neb. Evid. R. 103(1), Neb. Rev. Stat. § 27-103(1) (Reissue 1989) ("[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected"); Neb. Rev. Stat. § 29-2308 (Reissue 1989).

After a review of the record, we find that although the shotgun, shells, and photographs were irrelevant and should have been excluded, other evidence negatived prejudice from error in admitting that irrelevant evidence; for instance, the stolen auto parts identified in Messersmith's car; Strayer's and Stroh's testimony that they informed Messersmith that the parts, incorporated into Messersmith's car, were stolen from Ballou; items found in Messersmith's bedroom closet, such as several containers of methamphetamine and amphetamine, small self-sealing plastic bags, a triple-beam balance scale, sifter, funnel, scoop, and powdered sugar, all items commonly used for repackaging and sale of controlled substances; $1,255 cash in Messersmith's wallet; a list of names and monetary amounts related to those names; and a metric conversion chart. The shotgun and shells, more or less, were swallowed by all the other admissible evidence. The photographs of the interior of

the Messersmith residence, including what can best be characterized as a curious collection of household bric-a-brac and novel knickknacks, although irrelevant, were rendered harmless error by Ballou's meticulous testimony accompanied by a laundry list of auto parts stolen from Ballou. When we keep in mind that "circumstantial evidence may support a finding that a defendant intended to distribute, deliver, or dispense a controlled substance in the defendant's possession," *State v. Zitterkopf*, 236 Neb. 743, 748, 463 N.W.2d 616, 620 (1990), and that circumstantial evidence may include " ' "the quantity of the substance, the equipment and supplies found with it; the place it was found; the manner of packaging; and the testimony of witnesses experienced and knowledgeable in the field," ' " *id.* and *State v. Oldfield*, 236 Neb. 433, 461 N.W.2d 554 (1990), relevant evidence, properly admitted in Messersmith's case, dispels prejudice and supports the convictions on the charges against Messersmith.

We note that the State has expressed the proposition "The admission or exclusion of evidence is a matter within the discretion of the trial court." Brief for appellee at 20. The preceding proposition, although previously expressed by this court, is, nonetheless, an admittedly and recognized incorrect expression in reference to the Nebraska Evidence Rules. In *State v. Juhl*, 234 Neb. 33, 42, 449 N.W.2d 202, 209 (1989), we stated:

> [R]elevancy of offered evidence and exclusion of relevant evidence involve a trial court's discretion. Thus, whether a particular item of evidence has probative value and is, therefore, relevant, see Neb. Evid. R. 401 (Neb. Rev. Stat. § 27-401 (Reissue 1985)), or whether an item of evidence, although relevant, is excludable on account of the danger of unfair prejudice, confusion of issues, misleading the jury, undue delay in the proceedings, waste of time, or needless presentation of cumulative evidence, see Neb. Evid. R. 403 (Neb. Rev. Stat. § 27-403 (Reissue 1985)), may depend on a trial court's exercise of judicial discretion.

See, also, *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990) (relevance of offered evidence, otherwise admissible,

involves the discretion of a trial court, whose ruling on relevance will be upheld on appeal unless the trial court abused its discretion); *State v. Baltimore*, 236 Neb. 736, 463 N.W.2d 808 (1990) (a trial court's ruling on the relevancy of evidence will not be disturbed on appeal unless there has been an abuse of discretion); *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990).

Hence, in all proceedings where the Nebraska Evidence Rules apply, admissibility of evidence is controlled by the Nebraska Evidence Rules, not judicial discretion, except in those instances under the Nebraska Evidence Rules when judicial discretion is a factor involved in admissibility of evidence; for example, see, Rule 106(2) (remainder of related writings or recorded statements), Rule 201 (judicial notice of adjudicative facts), Rule 608(2) (cross-examination on specific instances of conduct), Rule 611(2) (scope of cross-examination), and Rule 706(3) (court-appointed expert disclosed to jury). Although the word "discretion," in one form or another, does not appear in either Rule 401 or Rule 403, nevertheless, judicial discretion, as a factor in admissibility, is implicit in Rule 401, concerning the admission of relevant evidence, and Rule 403, regarding exclusion of relevant evidence. Consequently, one might correctly conclude that we expressly disapprove of the all-inclusive and categorically unrestricted evidential proposition "The admission or exclusion of evidence is a matter within the discretion of the trial court," notwithstanding this court's previous use of that expression.

## REJECTION OF LIMITING INSTRUCTION

Messersmith claims that reversible error occurred when the district court refused to give a limiting instruction, requested by Messersmith, that the interior photographs of the Messersmith house showed only the condition of the premises and did not tend to establish that the depicted items were stolen. See Rule 105: "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury

accordingly."

> With the exception of an erroneous admission or exclusion of evidence, a defendant, as the appellant claiming reversible error in a criminal case, must demonstrate that a trial court's conduct, whether action or inaction during the proceeding against the defendant, prejudiced or otherwise adversely affected a substantial right of the defendant.

*State v. Juhl, supra* at 45-46, 449 N.W.2d at 211. Accord *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991). Cf. *State v. Cox*, 231 Neb. 495, 437 N.W.2d 134 (1989) (if evidence is erroneously admitted or excluded, the State has the burden to show that such error was harmless beyond a reasonable doubt).

While we have already concluded that the photographs were irrelevant and, therefore, inadmissible, but have also concluded that admission of the photographs was only harmless error, see "relevance of shotgun, shells, and photographs," above in this opinion, Messersmith does not refer to Rule 105 as a basis for the limiting instruction and, as far as we are able to ascertain, does not indicate how he was prejudiced by the absence of the restrictive instruction. For that reason, we find that Messersmith's assignment of error based on the district court's refusal to give a restrictive instruction authorized under Rule 105 has no merit.

### INSTRUCTIONS NOS. 2 AND 4

In his last assignment of error, Messersmith claims that the court erred in giving instructions Nos. 2 and 4, which stated the elements of theft by receiving stolen property, without designating by instruction the property stolen from Ballou, namely, auto parts.

"In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant." *Rose v. City of Lincoln*, 234 Neb. 67, 74, 449 N.W.2d 522, 528 (1989). Accord, *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991); *State v. Harney, supra*. "All instructions, read conjunctively, must correctly state the law, adequately state the issues, and not mislead the jury." *State v. Pierce*, 231 Neb. 966, 975, 439 N.W.2d 435, 443

(1989). Accord, *State v. Jasper, supra*; *State v. Harney, supra*.

Because the automobile parts found in Messersmith's car were the only property shown to be stolen from Ballou and received by Messersmith, and since Ballou itemized all the property stolen from him, that is, testified to and prepared a list of auto parts stolen, which list was received in evidence and considered by the jury, we find no prejudicial error in the district court's refusal to itemize by instruction the property stolen from Ballou. Messersmith's assignment of error directed to instructions Nos. 2 and 4 given by the court is without merit.

## CONCLUSION

Before concluding this opinion, we take the opportunity to commend the trial court and lawyers in this case regarding their refreshing familiarity with the use of Neb. Evid. R. 104(1) in reference to the motion in limine directed to "other acts" evidence under Rule 404(2). Although we have determined that the "other acts" evidence was admissible in Messersmith's case, nevertheless, court and counsel recognized the distinct problem, and possibility of a mistrial, in offering "other acts" evidence in the jury's presence and then discovering that the "other acts" evidence was inadmissible but, unfortunately, had already been heard by the jury. In *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989), we encouraged use of a hearing under Rule 104(1) to determine admissibility of a defendant's prior conviction offered pursuant to Rule 609 for impeachment of the defendant's credibility. As demonstrated in Messersmith's case, appropriate use of Rule 104(1) to resolve preliminary questions of admissibility, such as "other acts" evidence or other troublesome situations which may be sticky wickets for introduction of evidence, avoids evidential problems which need never occur in a trial. For that foresight, we gratefully acknowledge the proficiency of the district court and lawyers in handling the question about "other acts" evidence in Messersmith's case.

However, since none of Messersmith's assignments of error have merit, we affirm Messersmith's convictions and sentences.

AFFIRMED.