STATE OF NEBRASKA, APPELLEE, V. JOHN R. MAGGARD, APPELLANT.

502 N.W.2d 493

Filed February 23, 1993.   No. A-92-194.

Thomas M. Kenney, Douglas County Public Defender, and Janine F. Ucchino for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

SIEVERS, Chief Judge, and HANNON and IRWIN, Judges.

HANNON, Judge.

The defendant, John R. Maggard, was found guilty by a jury of first degree sexual assault on a child. The defendant was found not to be a mentally disordered sex offender and was sentenced to a term of imprisonment of not less than 9 nor more than 11 years. The defendant appeals to this court. We reverse, and remand for a new trial.

## FACTS

As we are required to do, the following evidence has been

viewed in a manner most favorable to the State: The victim was 12 years old at the time of the assault. While the victim's mother worked, the victim and her younger sister regularly went to their aunt N.T.'s house so that their cousin C.T. could babysit them. The defendant was N.T.'s boyfriend and resided at N.T.'s house. At the time of the assault, the defendant was 41 years old.

On May 6, 1991, the victim told a school counselor and a police officer that the defendant had sexually assaulted her by inappropriately touching her. Later in the interview, the victim said that she had not been sexually assaulted. The victim told the officer that she was mad at the defendant because he had slapped her and pushed her down. The officer asked her if that was why she had made up the sexual assault, and she answered that it was. No sexual assault charges were filed against the defendant at that time.

On May 7, the victim went to her aunt's house after school. The defendant asked C.T. to go to the store to pick up some things, leaving the victim and C.T.'s younger sister alone with him. After C.T. left, the defendant went into the living room, pulled his pants down, told the victim to pull her pants down, and then got on top of her. The victim testified that the defendant put his penis in her "private." After he finished, he told her not to tell anyone.

On May 8, the victim told a school counselor, a school administrator, and a police officer about the assault. She also told them that prior to the assault, the defendant had slapped her and given her a black eye.

On May 24, the victim testified at the preliminary hearing. The victim stated that she wanted the defendant out of her aunt's house and that she wanted to get back at him for slapping her. The victim stated that she told about the alleged sexual assault on May 7 to get the defendant in trouble, but added that the story was true. The defendant was charged with first degree sexual assault on a child.

At trial, Dr. James Faylor, the physician who examined the victim on May 8, testified that the victim's hymen was not intact. There was a small tear on the hymen and only a remnant of the hymen remained. Faylor stated that the tear was fresh and that it had probably occurred within 24 hours of the

examination.

C.T. is the daughter of N.T., the defendant's girl friend. C.T., who was 17 years old at the time of trial, testified that she used to babysit the victim and her sister while the victim's mother worked. C.T. stated that she had gone to the store on May 7 and left her sister and the victim alone with the defendant. C.T. stated that she was gone less than 45 minutes. Approximately 20 minutes after C.T. returned home from the store, the victim told her that the defendant had touched "[h]er privates." C.T. stated that the victim never told her that the defendant had penetrated the victim with his penis.

Over the defendant's objection, C.T. was allowed to testify that when she was young, the defendant used to take baths with her. These baths occurred approximately 9 years prior to the present trial. C.T. testified that the defendant had digitally penetrated her on one occasion.

C.F., N.T.'s 22-year-old daughter, was also allowed to testify at trial, over the defendant's objection, that she had taken baths with the defendant. C.F. stated that the defendant started taking baths with her when she was in second grade and continued to do so until she was a freshman in high school. C.F. also stated that the defendant had digitally penetrated her.

Dr. Patricia Sullivan, the psychologist who evaluated the victim, also testified at trial. Sullivan is one of the three persons who participated in an indepth evaluation of the victim after the alleged assault occurred. Sullivan performed a psychological evaluation on the victim to determine her intelligence and the dynamics of her personality. Sullivan also completed a behavioral checklist.

The victim told Sullivan that the defendant had penetrated her on May 7, and Sullivan recounted the victim's version of the assault at trial. Sullivan testified that the victim is mildly mentally retarded and that she has trouble comprehending questions. The victim was 13 years old when Sullivan evaluated her. Sullivan stated that in the language area, the victim had a mental age of 6 years and that in the nonlanguage area, the victim's mental age was 11 to 12 years. The victim is mentally retarded in the language area and has "low, average" abilities in the nonlanguage area.

Sullivan began to testify about research that she had reviewed regarding the truthfulness of children and the stages that they go through with respect to telling lies when the defendant objected. The court overruled the objection, and Sullivan then stated that children tell fantasy lies or wishful-thinking lies when they are 5 to 8 years old. Sullivan stated that only children who are 8 years old or older are able to purposely tell a lie to gain material things, escape punishment, protect themselves from fear or authority, or enhance themselves.

Sullivan stated that the victim, with a mental age of 6 years, fits within the category of children who are 5 to 8 years old. (We do not understand why Sullivan placed the victim in the group of children who are 5 to 8 years old. Her previous testimony indicated that the child had a mental age of 6 years in the language area only but that her mental age in the nonlanguage area was 11 to 12.) The defendant objected, and the court overruled his objection. Sullivan was allowed to state that the victim was incapable of telling a lie in the sense that she was aware that there was a falsity and had the intent to deceive others with a preconceived goal or purpose of deception. She also explained that many children, particularly mentally retarded children, frequently recant their stories of abuse.

The judge instructed the jury that the testimony of C.T. and C.F. was received solely for the limited purpose of showing the intent or motive of the accused in the acts charged and was not to be considered for the purpose of the guilt or innocence of the defendant. The judge also instructed the jury that it was to determine what weight, if any, to give an expert's testimony and that they had to consider the expert's credibility when doing so. The jury returned a guilty verdict. The defendant properly preserved the errors assigned.

## ASSIGNMENTS OF ERROR

The defendant alleges that the court erred (1) in admitting testimony concerning similar acts of sexual conduct committed by the defendant and (2) in admitting expert testimony regarding the victim's ability to lie.

## ADMISSIBILITY OF OTHER ACTS

The defendant's first assignment of error involves the admission of C.T.'s and C.F.'s testimony. Neb. Rev. Stat. § 27-404(2) (Reissue 1989) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The Nebraska Supreme Court has frequently noted that § 27-404(2) is a rule of inclusion rather than exclusion; the list of acceptable uses recited in the statute is illustrative and not intended to be exclusive. *State v. Martin*, 242 Neb. 116, 493 N.W.2d 191 (1992); *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991).

The Nebraska Supreme Court has stated that

" ' "[s]exual crimes have consistently been classified as those in which evidence of other similar sexual conduct has been recognized as having independent relevancy, and courts generally hold that evidence of other sex offenses by the defendant may be admissible, whether the other offense involves the complaining witness or third parties." ' "

*State v. Keithley*, 218 Neb. 707, 712, 358 N.W.2d 761, 765 (1984). Accord, *State v. Martin, supra*; *State v. Stephens, supra*.

The defendant contends that the testimony of C.T. and C.F. is inadmissible because it is remote in time and lacking in sufficient similarity. It is within the discretion of the trial court to determine admissibility of evidence of other wrongs or acts, and the trial court's decision will not be reversed absent abuse of that discretion. § 27-404(2); *State v. Christian*, 237 Neb. 294, 465 N.W.2d 756 (1991). Like all evidence, it is subject to the overriding protection of Neb. Rev. Stat. § 27-403 (Reissue 1989), which provides for the exclusion of relevant evidence if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless

presentation of cumulative evidence. *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990).

The defendant contends that the sexual contacts testified to by C.T. and C.F. lack sufficient similarity to the offense with which the defendant is charged in this case and that such contacts are too remote. Whether the prior offenses are sufficiently similar to the one charged in the case on trial so that evidence thereof has probative value is a matter left to the discretion of the trial court. See *State v. Keithley, supra*. There is enough similarity between the prior acts of sexual abuse involving the defendant and the sexual abuse in the present case, and the trial court did not abuse its discretion in admitting such evidence.

## ADMISSIBILITY OF EXPERT TESTIMONY

The defendant's second assignment of error involves Dr. Sullivan's trial testimony concerning the victim's ability to lie. At trial, counsel for the State asked Sullivan the following question: "In terms of [the victim's] age and in terms of her level for the different stages she went through on telling the truth, where would she be mentally?" The defendant objected, stating that the State was trying to obtain a conclusion concerning the victim's ability to lie based on the age group that she fit into. Counsel for the State replied that he was "trying to get this expert to testify that [the victim] is telling the truth." The court noted that Neb. Rev. Stat. § 27-608 (Reissue 1989) permits a witness to testify based on the witness' opinion as to another witness' character for truthfulness. Defense counsel restated that he believed that the State was trying to get Sullivan to say that based on a medical diagnosis, the victim was telling the truth. The court overruled the objection and stated that if defense counsel was correct, § 27-608 did not apply.

Over the defendant's objection, Sullivan then was allowed to testify in response to the question posed by the State, as follows:

A. In terms of the essential elements of lying, being awareness [sic] that there is a falsity and an intention to deceive others with a preconceived goal or purpose of the deception, in terms of the — that state of the art psychological literature on developmental aspects of lying

to children.

Q. Okay. And I'm a little confused. Where would she be?

A. She's in the stage where she's incapable of telling a lie as it is defined in those terms. Meaning that she would tell — she could tell a type of a wishful thinking lie, something that when reality is not acceptable to kids, they sometimes have fantasies. That's why very young children fantasize they're Superman, and they say I saw Superman when they really didn't. That kind of thing.

Q. That's where she would be?

A. She's in that stage, five to seven [sic], yes.

The determination of whether an expert's testimony or opinion will be helpful to a jury or assist the trier of fact in accordance with Neb. Rev. Stat. § 27-702 (Reissue 1989) involves the discretion of the trial court, whose ruling on admissibility of an expert's testimony or opinion will be upheld on appeal unless the trial court abused its discretion. *State v. Roenfeldt*, 241 Neb. 30, 486 N.W.2d 197 (1992); *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

Section 27-702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." In *State v. Roenfeldt, supra*, the Nebraska Supreme Court approved the use of expert testimony concerning the profile of a child abuse victim, also referred to as Child Sexual Abuse Accommodation Syndrome. "Profile evidence is typically admitted in evidence to assist the jury in understanding 'superficially bizarre behavior' of a putative victim, such as a child's ambivalence about pursuing a sexual abuse complaint . . . or a child's recantation of an earlier accusation." (Citation omitted.) *State v. Gokey*, 154 Vt. 129, 133, 574 A.2d 766, 768 (1990). The Nebraska Supreme Court explained that the reason for allowing profile evidence is that " '[f]ew jurors have sufficient familiarity with child sexual abuse to understand the dynamics of a sexually abusive relationship,' and 'the behavior exhibited by sexually abused

children is often contrary to what most adults would expect.' "
*State v. Roenfeldt*, 241 Neb. at 39, 486 N.W.2d at 204. In *State
v. Doan, ante* p. 484, 498 N.W.2d 804 (1993), the Nebraska
Court of Appeals recently analyzed the issue of the
admissibility of expert testimony that a child's claim of sexual
abuse was "validated." This court concluded that an expert
witness may not give such testimony because such testimony
expresses an opinion that the child is believable, that the child is
credible, or that the witness' account has been validated. The
principles discussed in *Doan* apply to this case.

However, in this case, the expert gave a direct opinion on the
credibility of a witness based simply upon what the expert
regarded as the mental age of that witness. The testimony
allowed in *State v. Roenfeldt, supra*, is clearly distinct from the
testimony given in this case. Sullivan's testimony was an
attempt to directly bolster the child's credibility with expert
opinion.

> In child sexual abuse litigation, the child's credibility is
> critical. Expert testimony on delayed reporting,
> recantation, and inconsistency has the *indirect* effect of
> bolstering the child's credibility. But are experts permitted
> to venture beyond indirect support, and to comment
> *directly* on the credibility of particular children or on the
> credibility of sexually abused children as a group? The
> answer from the courts is a resounding no.

1 John E.B. Myers, Evidence in Child Abuse and Neglect § 4.45
at 316 (2d ed. 1992).

This case presents the question of whether character evidence
is admissible if it is in the form of an expert's opinion that a
certain witness is telling the truth, based on the fact that the
witness is a member of a particular group. Section 27-608(1)
provides:

> The credibility of a witness may be attacked or supported
> by evidence in the form of reputation or opinion, but
> subject to these limitations: (a) The evidence may refer
> only to character for truthfulness or untruthfulness, and
> (b) evidence of truthful character is admissible only after
> the character of the witness for truthfulness has been
> attacked by opinion or reputation evidence or otherwise.

Pursuant to § 27-608, evidence of the victim's truthful character is admissible only after her character for truthfulness has been attacked. Before Sullivan testified, defense counsel attacked the victim's character for truthfulness by eliciting testimony from C.T. that the victim had a reputation for being untruthful. C.T. also stated that the victim had lied to her on several occasions. Under § 27-608, opinion or reputation evidence of the victim's truthful character was admissible to support her credibility. Thus, the issue becomes whether expert opinion testimony can be used to bolster the victim's credibility after her character for truthfulness has been attacked.

In *State v. Beermann*, 231 Neb. 380, 436 N.W.2d 499 (1989), a deputy testified at trial that he believed that the victim had been sexually abused. The Nebraska Supreme Court noted that the deputy's testimony could be construed as stating that the victim's testimony was true. The court stated:

> Secondly, it is totally improper for one witness to testify as to the credibility of another witness. The question of any witness' credibility is for the jury. Deputy Day's testimony may be construed as stating that the child's testimony is true. In that context, it is improper to permit any evidence that a witness is truthful, except under the provisions of Neb. Evid. R. 608 (Neb. Rev. Stat. § 27-608 (Reissue 1985)), which permits testimony, under certain conditions, concerning the character of a witness for truthfulness. This testimony was not of that type.

*State v. Beermann*, 231 Neb. at 396, 436 N.W.2d at 509. The court concluded that the fact that the deputy was not an expert provided an additional reason for excluding the testimony.

In *State v. Ammons*, 208 Neb. 812, 305 N.W.2d 812 (1981), the defendant offered the testimony of a psychologist as an expert witness to prove that eyewitness identification testimony tends to be inaccurate and unreliable. The trial court refused to admit the testimony, finding that the issue was not a proper subject for expert testimony. The Nebraska Supreme Court affirmed the trial court's exclusion of the testimony and stated:

> The general rule is that expert testimony is admissible only if it will be of assistance to the jury in its deliberations and relates to an area not within the competency of

ordinary citizens. If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, expert testimony may be admissible. Neb. Rev. Stat. § 27-702 (Reissue 1979). The expert testimony offered by the defendant in this case met none of those requirements. The accuracy or inaccuracy of eyewitness observation is a common experience of daily life. Such testimony would invade the province of the jury. It is not surprising that almost no authority can be found to support the defendant's contention.

*State v. Ammons*, 208 Neb. at 814-15, 305 N.W.2d at 814.

The Nebraska Supreme Court was again confronted with the admissibility of expert psychological opinion regarding the reliability of eyewitness testimony in *State v. Trevino*, 230 Neb. 494, 432 N.W.2d 503 (1988). In *State v. Trevino*, 230 Neb. at 517, 432 N.W.2d at 519-20, the court stated that *State v. Ammons, supra*, was concerned with the "expert's ability to assist the jury in understanding evidence which is beyond the ken of common experience . . . . *Ammons* stands for the proposition that it is not for an expert to suggest to the jury how a witness' testimony shall be weighed or evaluated . . . ." In concluding that expert testimony on accuracy of eyewitness observation was inadmissible, the court stated:

Second, the knowledge of behavioral scientists, such as psychologists, is probabilistic, couched in terms of averages, standard deviations, curves, and differences between groups. A court, however, is not concerned with the average eyewitness' reliability but with the reliability of the specific witnesses before it, who may vary from the average in probabilistic but ultimately unknown ways. It is not the research behavioral social scientist who is in a position to assess a specific witness' reliability; the jury, which views the witness as an individual, is best able to collectively determine, on the basis of common human experience as yet unsurpassed by laboratory research, how to weigh what an individual witness has to say.

*State v. Trevino*, 230 Neb. at 518, 432 N.W.2d at 520.

Other courts have examined the issue we face in this case and

have also concluded that expert opinion testimony regarding the truthfulness of another witness is generally not admissible. *State v. Myers*, 382 N.W.2d 91 (Iowa 1986); *McCalla v Ellis*, 180 Mich. App. 372, 446 N.W.2d 904 (1989); *State v. Erickson*, 454 N.W.2d 624 (Minn. App. 1990); *State v. Hill*, 463 N.W.2d 674 (S.D. 1990); *State v. Floody*, 481 N.W.2d 242 (S.D. 1992); *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Wis. App. 1984).

We conclude that the type of character evidence admissible under § 27-608 and Neb. Rev. Stat. § 27-405 (Reissue 1989) does not include the opinion of an expert witness regarding the truthfulness of another witness, based upon purported scientific studies. If a witness has an adequate basis for her opinion, she may give an opinion on another witness' character for truthfulness. However, the basis for such an opinion may not purport to be scientific. We find that the trial court erred in allowing Sullivan to give her opinion as to the victim's inability to lie.

In a jury trial of a criminal case, whether an error in admitting or excluding evidence reaches a constitutional dimension or not, an erroneous evidential ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. *State v. Messersmith*, 238 Neb. 924, 473 N.W.2d 83 (1991); *State v. Coleman*, 239 Neb. 800, 478 N.W.2d 349 (1992). Whether the jury believed the victim was a crucial issue at trial. Consequently, we cannot find that the admission of Sullivan's testimony concerning the victim's inability to lie was harmless error. We reverse the judgment of conviction and remand the cause for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.