STATE OF NEBRASKA, APPELLEE, V. MICHAEL L. HALL, APPELLANT.
465 N.W.2d 150

Filed February 1, 1991.    No. 89-1439.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos for appellant.

Robert M. Spire, Attorney General, and Melanie J. Whittamore-Mantzios for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

Defendant, Michael L. Hall, appeals from his convictions in the Lancaster County District Court of four felony offenses: count I, first degree sexual assault; count II, use of a weapon to commit the felony offense of first degree sexual assault; count III, robbery; and count IV, use of a weapon to commit the felony of robbery. After a jury trial, defendant was convicted. He was determined not to be a mentally disordered sex offender and, after a presentence investigation, was sentenced to a term of 15 to 18 years' imprisonment on count I, 5 to 10 years' imprisonment on count II, 5 years' imprisonment on count III, and 5 years' imprisonment on count IV. Credit was given to defendant for 470 days spent in custody. Each term was to be served consecutively and consecutive to any other prison term

or terms being served.

Defendant timely appealed to this court. He assigns four errors on this appeal, which may be summarized into three. Defendant contends that the district court erred in failing to sustain defendant's motion to suppress statements made to a Lincoln police officer and in admitting those statements, two of which were confessions, as evidence at trial, in that (1) the statements were obtained "in violation of his rights under the Due Process clause of the United States Constitution" and (2) the statements "were involuntarily obtained." Defendant also contends that the sentences imposed were excessive. We affirm.

The record shows as follows: On September 2, 1988, a 76-year-old woman was sexually assaulted and robbed at knife point while staying with her five grandchildren at her daughter's home in Lincoln, Nebraska. The victim testified that the electricity in the home had been shut off earlier in the day because her daughter had failed to pay the electric bill and that consequently, the children had gone to bed fairly early. At approximately 1 a.m. on September 2, the victim retired to bed in a room shared by two of her grandsons. She awoke to find a man standing in the doorway between the living room and bedroom, but because of the darkness she was unable to identify him with particularity. The victim further testified:

> He [the man] had the knife in his left hand and I had ahold of his hand and the knife and he had ahold of my wrist with his right hand . . . and we struggled and I kept calling [for] my grandson . . . . I kept calling . . . but he didn't answer. We kept struggling and finally I started praying out loud . . . .

The man traced her face and throat with the knife blade, hit her in the chest, and then forced her to have vaginal, oral, and anal sex with him. The man then asked the victim for money and put the point of the knife at her back as she went to get her purse. Although she could not see her assailant, she testified that she could feel his facial hair as he was assaulting her and that she could tell he was "very heavy chested, stocky built." She further stated that he was wearing gloves with part of the fingers cut off and a cap that fit tightly over his head, "like a swimming cap would fit." Eventually, the man left the premises with a

television set, a radio, and the money he took from the victim. The victim's 10-year-old grandson corroborated his grandmother's testimony, stating that he heard her yell his name and then heard his grandmother start to pray. The child testified that he did not answer because he was too frightened.

The victim's daughter arrived home at approximately 3:15 a.m., found her mother in a state of shock, and used a neighbor's phone to call the police. The Lincoln police arrived and began an investigation of the incident.

Det. James J. Breen, an officer with the Lincoln Police Department, reviewed the initial reports and discussed the case with the investigating officers. On September 5, 1988, Detective Breen received a telephone call from two anonymous informants regarding defendant's involvement in a sexual assault and robbery at the residence of the victim's daughter in Lincoln. The information that Breen received from the informants was consistent with known information in the ongoing investigation of the incident, and led Detective Breen to believe that evidence of the crimes could be recovered from defendant's residence. Lincoln police obtained a search warrant for defendant's residence at 1405 Washington Street in Lincoln and went to defendant's residence about 3 a.m. on September 6, 1988. Breen did not immediately advise defendant of the search warrant, but asked defendant if he would go down to the police station and discuss the sexual assault case. Defendant agreed and went to the police headquarters with Breen. Defendant and Detective Breen sat at a large conference table. Breen told defendant that defendant was free to leave, that he was not under arrest, and that Breen wanted to talk to the defendant about defendant's possible involvement in the case. Defendant made no admissions at this time.

After Breen and defendant left defendant's residence, other officers executed the search warrant at defendant's residence and found the stolen television set and radio, a knife, a pair of gloves with the fingers cut off, and a nylon stocking cap. At 4:20 a.m., the other officers contacted Detective Breen and told him of the items found. Detective Breen placed defendant under arrest and at this point advised him of his *Miranda* rights. Defendant answered each of the questions on the rights

advisory form affirmatively, indicating that he understood that by doing so he waived his right to remain silent and to have an attorney present for any further questioning, as well as his other *Miranda* rights.

Defendant then asked "what the next step in the process was," and Detective Breen explained that defendant would have to go to the hospital for certain blood and saliva tests. Detective Breen then handcuffed defendant and began to walk with him toward the front door of the police station to transport him to the hospital for these tests, when defendant stopped and "kind of leaned up against the wall, and said . . . 'I need some help. I've needed help ever since I was a little kid.' " Detective Breen asked defendant if he wished to discuss the matter further, escorted defendant back to the investigations area, removed the handcuffs, and discussed the incident with defendant. Defendant was quite emotional at this time, and Detective Breen told defendant that "we would, if he needed help, try to see that he got it." It was at this time that defendant first admitted his involvement in the crimes against the victim, stating, as Breen testified, that

> he had been in the house and had been walking through the residence and was essentially startled or surprised by finding this woman who he thought was elderly . . . . He said he had intercourse with her and he said he was aggressive during the intercourse . . . . He said that he never had any intentions of physically hurting her . . . .

Based on this oral admission, Detective Breen taped a second conversation between himself and defendant wherein defendant again was given his *Miranda* rights and again admitted his involvement in the crimes.

Detective Breen was the only witness at the suppression hearing. He testified at the suppression hearing and again at trial that he did not make any promises or use any force or coercion to obtain defendant's confession and that defendant was cooperative and freely, voluntarily, and intelligently made statements to him regarding the crimes.

Defendant's first assignment of error is that the district court erred in failing to sustain his motion to suppress the statements that he made to Detective Breen during his interview. The court

denied this motion after a pretrial hearing which also served to determine the voluntariness of defendant's statements, as required by *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964). Defendant timely objected during trial to the admission of his unrecorded and recorded statements. The objections were overruled, Detective Breen was allowed to testify regarding the unrecorded confession, and the taped statement was received into evidence. Thus, defendant has preserved the question for review by this court. See, *State v. Walker*, 236 Neb. 503, 461 N.W.2d 755 (1990); *State v. Boppre*, 234 Neb. 922, 453 N.W.2d 406 (1990).

Defendant was given his *Miranda* rights twice, and twice waived them. His first contention on this appeal is not specifically that his *Miranda* rights were violated, but, rather, that his due process rights under the 14th amendment to the U.S. Constitution were violated "when his confession was allowed into evidence," brief for appellant at 12, since it was the product of coercion and inducement and not freely and voluntarily given. We have examined the record and determine that defendant was fully advised of all his rights under *Miranda* before making any incriminating statements.

Insofar as the voluntariness issue is concerned, defendant contends that Detective Breen coerced and induced him into admitting his involvement in the attack on the victim by subjecting defendant to an extensive interrogation "prior to defendant's arrest, and after handcuffs had been placed upon [him]," brief for appellant at 13, by using "threatening overtones" during questioning, and by promising to obtain help for defendant. Specifically, defendant alleges that Detective Breen was threatening when he told defendant the judge would not look favorably on a defendant who expressed no remorse for his crimes and that Breen induced defendant to confess by promising to get defendant some help.

Findings of fact on a motion to suppress will not be overturned by this court unless those findings are clearly erroneous. *State v. Walker, supra*; *State v. Porter*, 235 Neb. 476, 455 N.W.2d 787 (1990). Whether a defendant's statement results from an officer's promise is a question of fact. *State v. Cody*, 236 Neb. 69, 459 N.W.2d 195 (1990). In determining

whether these findings are clearly wrong, we take into consideration that the trial court observed the witnesses testify during the hearing. *Walker, supra.*

The State must show that the statement, admission, or confession of the accused was given freely and voluntarily and was not the product of any promise or inducement, direct or implied, no matter how slight, before it will be admitted into evidence. *Walker, supra; Porter, supra.*

Voluntariness is determined by the totality of the circumstances, and a determination by the trial judge that a confession was made voluntarily will not be overturned on appeal absent an abuse of discretion. *Walker, supra.*

Detective Breen was the only witness who testified at the suppression hearing. Defendant did not testify at either the hearing or the trial. The record of the suppression hearing shows that defendant was cooperative during the initial questioning, that Detective Breen told defendant he was not under arrest at that time, and that defendant was free to leave at any time during the conversation. At this time, defendant maintained his innocence and made no admissions, stating, as Breen testified, that "even if he had done this he knew enough not to admit his involvement."

The record further shows that after defendant was placed under arrest, he was twice given his *Miranda* rights and twice knowingly waived those rights.

After defendant's arrest, when defendant stated that he "needed help," Detective Breen did tell defendant that he would try to get defendant some help. However, he did not indicate or imply to defendant that help would be forthcoming only in exchange for a confession.

Considering the totality of the circumstances, we cannot say that Detective Breen's statements to defendant were coercive or an improper inducement to confess. Nor can we say that the trial court abused its discretion in finding that defendant's statements were voluntarily made and in overruling defendant's motion to suppress his statements. Defendant's first two assignments are without merit.

Defendant's final assignment of error is that his sentences were excessive. It is well settled in Nebraska that a sentence

imposed within the statutorily prescribed limits will not be disturbed on appeal absent an abuse of discretion. *State v. Harris,* 236 Neb. 783, 463 N.W.2d 829 (1990). Defendant was sentenced on four counts. Counts I and III are Class II felonies, with a possible sentence of 1 to 50 years' imprisonment. Counts II and IV are Class III felonies, with a possible sentence of 1 to 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Reissue 1985). On count I, first degree sexual assault, the court found that defendant caused serious personal injury to the victim, and he was sentenced to a term of 15 to 18 years' imprisonment. On count III, robbery, a sentence of 5 years was imposed. Defendant received a sentence of 5 to 10 years' imprisonment on count II, and 5 years' imprisonment on count IV. All terms are to run consecutively and consecutive to a 25-year term for aggravated rape imposed by a Texas court. Defendant was on parole from that latter charge when he committed the crimes in this case. Credit was given for time previously served. Defendant's sentences were well within the statutory limits.

The presentence investigation report also shows that defendant, age 36, has had a long history with the criminal justice system in Nebraska, beginning with juvenile offenses. He was convicted of three counts of burglary in 1972 and was sentenced to prison at that time.

In light of the serious nature of the crimes and the background of defendant, as reflected in the presentence investigation report, we cannot say that the trial court abused its discretion in sentencing defendant. The convictions and sentences of defendant are affirmed.

AFFIRMED.