STATE OF NEBRASKA, APPELLEE, V. ROBERT CASE, APPELLANT.

553 N.W.2d 167

Filed August 6, 1996. No. A–95–826.

John D. Feller, of Feller Law Office, P.C., for appellant.

Don Stenberg, Attorney General, and Barry Waid for appellee.

MILLER–LERMAN, Chief Judge, and IRWIN and MUES, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Appellant, Robert Case, challenges his convictions of two counts of first degree sexual assault, see Neb. Rev. Stat. § 28–319(1)(c) (Reissue 1989), and three counts of sexual assault of a child, see Neb. Rev. Stat. 28–320.01 (Reissue 1995). Case challenges the district court's orders denying Case's request for bill of particulars and Case's motion to suppress statements and the district court's order granting the State's motion in limine. Because we find no error, we affirm.

## II. BACKGROUND

Appellant, Robert Case, resided with his wife and 16–year–old son in Oakland, Nebraska. At the time of the filing of the information in this case, Case was 46 years old and was employed by the Oakland–Craig Public Schools as a janitor. On or about July 28, 1994, the son made allegations that Case had been sexually assaulting him over a period of several years.

The son accused Case of subjecting him to fondling beginning when the son was approximately 6 years old. He alleged that Case subjected him to repeated incidents of fondling and mutual masturbation over a period of approximately 10 years. The son further alleged that the fondling escalated to episodes of oral sex beginning when he was in sixth or seventh grade. He alleged that the fondling episodes occurred in several locations, including the family home, Case's pickup truck, the Oakland City Auditorium, and Case's mother's home. The son testified that the episodes of oral sex occurred exclusively in the family home.

On July 29, Case drove himself to the Nebraska State Patrol offices in Norfolk, Nebraska, to take a polygraph examination. At that time, Sgt. Ronald Hilliges of the Nebraska State Patrol conducted a prepolygraph interview. Hilliges informed Case of his rights, and Case signed two different rights advisory forms. Hilliges repeatedly reminded Case that the entire procedure was voluntary and that Case could stop or refuse to take the test at any time. During the prepolygraph interview, Case made several incriminating statements to Hilliges. As a result of the

incriminating statements, the polygraph test was never administered.

An information was filed on October 4, charging Case with seven counts of sexual misconduct. Specifically, the information alleged as follows:

## COUNT I

That Robert Case, on or about September 1, 1989, through May 31, 1990, in the County of Burt and State of Nebraska, then and there being a person of more than nineteen years of age, did then and there subject [the son], a person of less than sixteen years of age, to sexual penetration;

## COUNT II

That Robert Case, on or about September 1, 1989, through May 31, 1990, in the County of Burt and State of Nebraska, then and there being nineteen years of age or older, subjected [the son], a child 14 years of age or younger, to sexual contact;

## COUNT III

And further, that Robert Case, on or about September 1, 1990, through May 31, 1991, in the County of Burt and State of Nebraska, then and there being a person of more than nineteen years of age, did then and there subject [the son], a person of less than sixteen years of age, to sexual penetration;

## COUNT IV

That Robert Case, on or about September 1, 1990, through May 31, 1991, in the County of Burt and State of Nebraska, then and there being nineteen years of age or older, subjected [the son], a child 14 years of age or younger, to sexual contact;

## COUNT V

That Robert Case, on or about September 1, 1991, through May 31, 1992, in the County of Burt and State of Nebraska, then and there being a person of more than nineteen years of age, did then and there subject [the son], a person of less than sixteen years of age, to sexual penetration;

## COUNT VI

That Robert Case, on or about September 1, 1991, through May 31, 1992, in the County of Burt and State of Nebraska, then and there being nineteen years of age or older, subjected [the son], a child 14 years of age or younger, to sexual contact;

## COUNT VII

That Robert Case, on or about September 1, 1992, through December 31, 1992, in the County of Burt and State of Nebraska, then and there being a person of more than nineteen years of age, did then and there subject [the son], a person of less than sixteen years of age, to sexual penetration.

Case was arraigned on October 11, 1994. Case waived the reading of the information, pled not guilty to all seven counts, was advised of his rights, and requested a jury trial.

On October 26, Case filed a motion in limine regarding any discussion of the polygraph examination at trial. On the same date, Case also filed a motion requesting a psychiatric examination of the son.

On December 9, Case filed a motion for bill of particulars, requesting the State to inform him of the exact location, date, time, and precise manner of commission of the criminal acts contained in the information. On December 20, the State filed objections to the motion for psychiatric examination of the son and the motion for bill of particulars.

On December 21, the court conducted a hearing on Case's motion in limine, motion for psychiatric examination of the son, and motion for bill of particulars. At that hearing, Case withdrew the motion in limine. The court received evidence and heard argument on the remaining motions and took the matters under advisement. On January 30, 1995, the court entered an order overruling Case's motion for psychiatric examination of the son and motion for bill of particulars.

On March 23, the State filed numerous motions in limine, including a motion in limine to prevent Case from calling a witness purported to be an expert in the field of coercive interview tactics. Case proposed to call Dr. Ralph Underwager to testify that the interview tactics employed by Sergeant

Hilliges during the prepolygraph interview were coercive and led Case to make involuntary statements.

On March 27, Case filed a motion in limine regarding the polygraph examination and a motion to suppress statements made during the prepolygraph interview. Case alleged that any statements he made were coerced.

The State's motions in limine and Case's motion in limine and motion to suppress were scheduled for hearing on April 4. On that date, Case filed a motion for continuance, seeking a continuance of the hearing and the trial because of health problems experienced by Dr. Underwager. The court granted a continuance of the trial to May 22. The court also granted a continuance of the hearing concerning the State's motion in limine regarding Dr. Underwager's testimony. The court allowed the State to present evidence regarding Case's motion to suppress and continued the hearing until May 17 regarding presentation of evidence by Case.

On May 17, the court conducted a hearing on the State's motion in limine regarding Dr. Underwager's testimony and Case's motion to suppress. On that date, Dr. Underwager was again unavailable. Case presented no evidence regarding his motion to suppress. Case also presented no evidence regarding the State's motion in limine. The court granted the State's motion in limine and ruled that no testimony would be allowed at trial from Dr. Underwager. The court also overruled Case's motion to suppress statements made during the prepolygraph interview.

On May 22, the State moved to dismiss counts I and VII of the information. As a result, Case was tried for two counts of first degree sexual assault and three counts of sexual assault of a child. Trial was conducted on May 22 through 26. The jury returned a verdict of guilty on all five counts. On June 5, Case filed a motion for new trial. On August 1, the court overruled Case's motion for new trial and sentenced Case to 10 to 20 years' imprisonment on each of the two counts of first degree sexual assault and 2 to 4 years' imprisonment on each of the three counts of sexual assault of a child. All of the imposed sentences were to be served concurrently. This appeal timely followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Case assigns three errors. First, Case alleges the district court erred in overruling Case's motion for bill of particulars. Second, Case alleges the district court erred in overruling Case's motion to suppress statements made during the prepolygraph interview. Third, Case alleges the district court erred in granting the State's motion in limine regarding the testimony of Dr. Underwager.

## IV. STANDARD OF REVIEW

An appellate court has an obligation to reach a conclusion independent of that of the trial court on questions of law. *State v. Roche, Inc.*, 246 Neb. 568, 520 N.W.2d 539 (1994); *State v. Martinez, ante* p. 192, 541 N.W.2d 406 (1995).

In determining the correctness of a trial court's ruling on a motion to suppress, an appellate court will uphold the decision of the trial court unless the court's findings of fact are clearly erroneous. *State v. Ray*, 241 Neb. 551, 489 N.W.2d 558 (1992). An appellate court recognizes the trial court as the trier of fact and takes into consideration that the trial court observed the witnesses. *Id.* In reviewing the trial court's ruling on a motion to suppress, an appellate court considers all the evidence, at trial as well as at the hearing on the motion. *State v. Huffman*, 181 Neb. 356, 148 N.W.2d 321 (1967).

A trial court's factual finding concerning a determination of whether a witness qualifies as an expert will be upheld on appeal unless the trial court's finding is clearly erroneous. *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990). The determination whether an expert's testimony will assist the trier of fact involves the discretion of the court, whose ruling on admissibility of an expert's testimony will be upheld on appeal in the absence of an abuse of discretion. *Id.*

## V. ANALYSIS

### 1. BILL OF PARTICULARS

Case assigns as error the district court's ruling denying his motion for bill of particulars. Case asserts that the district court erred with respect to this ruling for two reasons. First, Case asserts that he "has a constitutional right to be adequately

informed of the charges against him." Second, Case asserts that a bill of particulars was necessary to adequately protect his rights against double jeopardy in the event a future prosecution is commenced against him for similar acts during the time periods charged in the information in the present case.

(a) Adequacy of Information

An information must apprise a defendant with reasonable certainty of the charges against him so that he may prepare a defense to the prosecution and be able to plead a judgment of conviction as a bar to a later prosecution for the same offense. *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Wehrle*, 223 Neb. 928, 395 N.W.2d 142 (1986); *State v. Martinez, ante* p. 192, 541 N.W.2d 406 (1995) (*Martinez I*). See *State v. Martinez*, 250 Neb. 597, 550 N.W.2d 655 (1996) (*Martinez II*). An information which alleges the commission of a crime using the language of the statute which defines the crime is generally sufficient. *State v. Bowen*, 244 Neb. 204, 505 N.W.2d 682 (1993); *State v. Wehrle, supra*; *Martinez I*.

To the extent that Case's motion for bill of particulars was an effort to correct alleged inadequacies in the information for purposes of preparing an adequate defense, we note the following principle of law: When a defendant wishes to challenge the certainty and particularity of the information for the preparation of his defense, a motion to quash is the proper method of attack. *State v. Bocian*, 226 Neb. 613, 413 N.W.2d 893 (1987).

Case failed to avail himself of this procedure and pled not guilty to all the charges at arraignment. He did not move to quash the information as provided for in Neb. Rev. Stat. 29–1808 (Reissue 1995), nor did he otherwise attack the sufficiency of the information prior to his arraignment. In Nebraska, the rule is that all defects which may be excepted to by a motion to quash are considered waived by a defendant who pleads the general issue. Neb. Rev. Stat. 29–1812 (Reissue 1995); *State v. Bocian, supra*; *State v. Owen*, 1 Neb. App. 1060, 510 N.W.2d 503 (1993).

To the extent that Case is arguing that he may have been hindered in his ability to prepare his defense because of the language of the information, he waived the right to challenge the language by pleading not guilty at arraignment.

### (b) Double Jeopardy

This court recently noted in *Martinez I*, that the sufficiency of the information for *double jeopardy purposes* is not waived by pleading at arraignment and proceeding to trial without challenging the information. Case's argument on appeal is devoted almost entirely to a claim that the language of the information prevents him from being able to plead the judgment in the present case as a bar to future prosecution for the same offense.

Case argues that because of the broad language of the information filed against him, "no one will be able to determine which of several acts during a particular time frame [Case] has been found guilty of committing." Brief for appellant at 13. Case argues that he was therefore entitled to a bill of particulars which could be used to support a plea of former adjudication in any future prosecution for the same offense.

Case relies primarily on this court's decision in *State v. Quick*, 1 Neb. App. 756, 511 N.W.2d 168 (1993), in support of his argument that a bill of particulars was necessary to protect his double jeopardy rights. In *Quick*, the defendant was charged with one count of sexual assault during a 2-week timeframe. At trial, the State was allowed to amend the information to expand the time period to nearly 1 year. During trial, the State produced evidence that the victim was sexually assaulted four times during that year. Based on that evidence, Quick was convicted of one sexual assault. On appeal, the court found that the conviction could not stand, because even by reference to the record, one could not determine which of the four assaults had resulted in the conviction. The court held: "When a conviction could be based on any of two or more occasions of indistinguishable criminal conduct alleged at trial, the record must clearly indicate which occasion of criminal conduct supports the conviction in order for the judgment to serve as a

bar to future prosecution." 1 Neb. App. at 765, 511 N.W.2d at 172.

In *Martinez I*, this court recently reevaluated the holding in *Quick*. In *Martinez II*, the Nebraska Supreme Court affirmed the holding of *Martinez I* and expressly disapproved of the holding in *Quick*.

In *Martinez I*, the court noted that the court in *Quick* rejected the solution of a "blanket bar" to future prosecution for defendants who are charged with one sexual assault during a particular timeframe when the evidence at trial reveals the possibility of two or more assaults during the charged time period. The *Martinez I* court, however, rejected the prohibition against a "blanket bar" and extended the protection of such a "blanket bar" to defendants in sexual assault cases. The court quoted with approval the reasoning of the Wisconsin Court of Appeals in *State v. Fawcett*, 145 Wis. 2d 244, 426 N.W.2d 91 (Wis. App. 1988), which held:

> "If the state is to enjoy a more flexible due process analysis in a child victim/witness case [in pleading the charge in the information], it should also endure a rigid double jeopardy analysis if a later prosecution based upon the same transaction during the same time frame is charged. . . ."

*Ante* p. 206, 541 N.W.2d at 415 (quoting *State v. Fawcett, supra*).

The *Martinez I* court also adopted the reasoning of a Connecticut Court of Appeals case, recognizing that in cases involving sexual abuse of very young children, the child's capacity to recall specifics is very limited. See *Martinez I* (citing *State v. Saraceno*, 15 Conn. App. 222, 545 A.2d 1116 (1988)). The Connecticut court held that to impose a requirement of certitude in the information as to date, time, and place would render prosecutions of those who sexually abuse young children impossible and would, by judicial fiat, establish a class of crimes committable with impunity. See *State v. Saraceno, supra*

As the court in *Martinez I* noted, without the application of a "blanket bar," convictions in cases of multiple offenses against children would be very difficult to sustain in the face of

double jeopardy challenges when there exist multiple assaults over a lengthy timeframe upon a young and possibly frightened child. Further, when there are multiple instances of assault, the inability to define a specific date often becomes even more pronounced. *Martinez I.* Balancing those difficulties against the defendant's constitutional right to be free from double jeopardy as a result of future prosecutions, a "blanket bar" will allow the crimes to be effectively prosecuted while still protecting the defendant's double jeopardy rights. See *Martinez II.* "It is preferable to allow the State to conduct one vigorous prosecution to protect a child rather than to bar any prosecution at all . . . ." 250 Neb. at 601, 550 N.W.2d at 658.

■ Our analysis here is concerned only with whether this conviction must be reversed because Case was denied a bill of particulars and the charging information was not particular enough to enable Case to use these convictions as a bar to future prosecution. In the event a future prosecution against Case for sexually assaulting the son is undertaken by the State, Case will be able to plead that further prosecution based on a sexual assault of the son during any of the time periods set out in the five counts of the amended information is barred by the Double Jeopardy Clause of the U.S. Constitution because of the "blanket bar." See *Martinez II.* This assigned error is without merit.

## 2. MOTION TO SUPPRESS

Case sought to suppress statements which he made to Sergeant Hilliges during the prepolygraph interview on the grounds that the statements were not "freely and voluntarily given" because Case was "coerced" into making them. Case's motion to suppress was originally scheduled for hearing on April 4, 1995. On April 4, the court heard argument and received evidence on other motions and allowed the State to present its evidence on Case's motion to suppress. Because of the unavailability of Case's chief witness on the issue of coercion, Case requested and received a continuance of the hearing to May 17. On May 17, Case's witness was again unavailable, Case presented no evidence in support of his motion, and the court overruled it.

### (a) The Interview

The prepolygraph interview conducted by Sergeant Hilliges was videotaped, and the videotape was played for the jury during trial. During the interview, Hilliges explained Case's rights, including the right to remain silent, the right to have counsel, and the right to stop the interview or polygraph examination at any time. Case signed two different rights advisement forms. Case was reminded several times during the interview that the entire process was voluntary and that he could stop at any time, if he so chose.

Hilliges explained to Case that the purpose of the prepolygraph interview was for Case to become familiar with the process and how the polygraph machine worked and that Hilliges and Case would go over all questions that would be asked during the polygraph examination during the prepolygraph interview so that Case would not be surprised by any of the questions.

During the course of the interview, Hilliges attempted to elicit Case's version of the events or what might have happened to generate the accusations. Hilliges related to Case a prior interview, in which Hilliges interviewed a man who had been falsely accused of sexual assault, to illustrate that in some instances there may be reasonable explanations for actions that lead to an accusation of sexual assault.

At trial, Hilliges admitted that during prepolygraph interviews he may attempt to "minimize" the charges being brought against an accused or may attempt to be "friendly" toward the accused by saying things that Hilliges does not necessarily believe are true. In the present case, Hilliges admitted that he was "friendly" toward Case, but denied attempting to "befriend" him. Hilliges also acknowledged that at some point during the interview, he decided that he was going to attempt to elicit an admission from Case.

During the interview, Hilliges suggested that the son was exaggerating the extent of what happened. Hilliges asked Case if it was possible that he might have "touched [the son's] penis" in the act of demonstrating masturbation in an effort to teach the son about sex. Case admitted that it was possible. Later during the interview, Case related an incident of touching the

son's penis in the shower and stated that he probably stroked the son's penis "6 or 8 strokes."

Hilliges also confronted Case about the allegations of oral sex. Hilliges told Case that the son was alleging the oral sex had occurred on 30 to 40 occasions, and Hilliges told Case that the number seemed like an unbelievable number of times. Hilliges told Case that if there was any possibility that he had *ever* placed his penis in the son's mouth, or vice versa, and Case denied it during the polygraph examination, Case would fail the polygraph. Case told Hilliges that he was sure it did not happen 40 or 50 times and that it would have happened "[o]nce or twice, if it happened at all." Hilliges then asked Case if there was oral sexual contact between Case and the son. Case answered "Yes." Hilliges then asked Case how often it occurred, and Case answered, "I'm still sticking with one or mabye [sic] two times."

### (b) The Law

 "The especially damning nature of a confession requires the State to prove that the statement was voluntary before it is admissible." *State v. Walker*, 242 Neb. 99, 102–03, 493 N.W.2d 329, 333 (1992). At a suppression hearing, the State has the burden to establish voluntariness by a preponderance of the evidence. *State v. Brewer*, 241 Neb. 24, 486 N.W.2d 477 (1992). The Supreme Court has stated that the test for voluntariness of a statement is as follows:

> "To meet the requirement that a defendant's statement, admission, or confession was made freely and voluntarily, the evidence must show that such statement, admission, or confession was not the product of any promise or inducement—direct, indirect, or implied—no matter how slight. However, this rule is not to be applied on a strict, per se basis. Rather, determinations of voluntariness are based upon an assessment of all of the circumstances and factors surrounding the occurrence when the statement is made. . . ."

*State v. Walker*, 242 Neb. at 103, 493 N.W.2d at 333 (quoting *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992)).

Sergeant Hilliges admitted to acting "friendly" toward Case and also admitted that he sometimes says things which he does not necessarily believe to be true as part of his interview techniques. An interrogation tactic in which the police appear to befriend the defendant does not, by itself, render a statement or confession involuntary. *State v. Walker, supra.* Further, deception alone will not render a statement involuntary. *Id.* A defendant's statement is rendered inadmissible by interrogation tactics only if the totality of the circumstances shows that the police offered the defendant some type of benefit in exchange for the statement or otherwise overbore the will of the defendant and produced a false or untrustworthy confession. See *id.*

■ Whether a defendant's statements are the result of an officer's promise is a question of fact. *State v. Ray,* 241 Neb. 551, 489 N.W.2d 558 (1992). A determination by the trial court that a statement was made voluntarily will not be disturbed on appeal unless the court's determination was clearly wrong. *Id.* See, also, *State v. Haynie,* 239 Neb. 478, 476 N.W.2d 905 (1991). The trial court's ruling on a motion to suppress statements will be disturbed only if the court's findings of fact are clearly erroneous. *State v. Walker, supra.* In making this determination, we do not reweigh the evidence or resolve conflicts in the evidence, but do recognize that the trial court is the finder of fact and has observed the witnesses. *Id.* Thus, the inquiry in the present case is whether the trial court was clearly erroneous in not finding that the police conduct, in the context of the totality of the circumstances, overbore Case's will and rendered his statements involuntary.

Case never made any claim that Sergeant Hilliges promised him anything or offered him anything in exchange for his statements. Case merely testified that he felt Hilliges was on his side and that Hilliges made Case realize there was a "seed of doubt" about whether anything happened. Case testified that he understood the advisement forms read to him and that he knew he could stop at any time.

As noted above, Case offered no evidence in support of his motion to suppress. In reviewing a trial court's ruling on a motion to suppress evidence, we may consider all the evidence, at trial as well as at the hearing on the motion. *State v.*

*Huffman*, 181 Neb. 356, 148 N.W.2d 321 (1967). The record reflects that even if we consider Case's testimony at trial on the issue of voluntariness, the trial court's ruling was not clearly erroneous.

The record is devoid of any instances where the conduct of Sergeant Hilliges was coercive as has been discussed above. Case presents no instances where Hilliges promised him anything, threatened him in any way, or otherwise overbore his free will. Case's testimony overwhelmingly demonstrates that he was fully aware of his rights and chose to make voluntary statements to Hilliges during the prepolygraph interview. This assigned error is without merit.

### 3. MOTION IN LIMINE

#### (a) Procedural History

During pretrial discovery, Case disclosed that he intended to call Dr. Underwager as an expert witness. Dr. Underwager is a licensed psychologist who has testified in court on numerous prior occasions. Dr. Underwager has done work in the field of coerced confessions, including polygraph examinations and prepolygraph interviews.

The State filed a motion in limine to prevent Dr. Underwager from testifying in the present case. The State alleged that Dr. Underwager held himself out as an expert able to detect false allegations of child abuse by using methods alleged to detect " 'false memory syndrome' " or " 'learned memories.' " The State argued that Dr. Underwager's testimony would amount to an improper comment upon the credibility of the other witnesses. It appears from the record that Case offered no evidence in response to the State's motion. On May 17, 1995, the court sustained the motion and ruled that Dr. Underwager's testimony was inadmissible at trial.

Case made an offer of proof at trial which consisted of a short direct examination of Dr. Underwager, outside of the presence of the jury. Dr. Underwager testified that he had reviewed the videotape of the prepolygraph interview, as well as Case's medical records. Dr. Underwager also interviewed Case and administered several commonly used psychological tests. Dr. Underwager testified that the field of coerced confessions

has been around for many years and that the primary focus has been on "psychological-type" coercion. Dr. Underwager testified that he found several instances of "coercion" during the prepolygraph interview, including the setting, Sergeant Hilliges' statement that the machine is infallible, Hilliges' minimization of the charges and befriending of Case, and the interview process itself. Finally, Dr. Underwager testified that Case is very susceptible to these interview techniques.

In response to Case's offer, the State made an offer of proof outside of the presence of the jury. The State argued that Dr. Underwager had no scientific means of testing the voluntariness of Case's statements and that Dr. Underwager was using the psychological tests in a novel fashion. At the conclusion of the offers of proof, the court stated that its previous ruling on the motion in limine would stand.

### (b) Expert Testimony

The State's motion in limine requested the exclusion of expert testimony. Several of the Nebraska Evidence Rules are applicable in determining the admissibility of expert testimony, including Neb. Evid. R. 702: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise"; Neb. Evid. R. 401: "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"; Neb. Evid. R. 402, in part: "Evidence which is not relevant is not admissible"; and Neb. Evid. R. 403: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See *State v. Reynolds*, 235 Neb. 662, 457 N.W.2d 405 (1990).

For admissibility of an expert's testimony pursuant to rule 702, the witness must be qualified as an expert whose

proffered testimony will assist the trier of fact to understand the evidence or determine a factual issue. *State v. Reynolds, supra.* Therefore, the trial court must first determine whether the witness is qualified to provide an expert opinion pursuant to the qualifications of rule 702. *State v. Reynolds, supra.* The determination of whether a witness qualifies as an expert under rule 702 is a preliminary question of admissibility for the trial court under Neb. Evid. R. 104(1) and depends upon the factual basis or reality behind the witness' title or claim to expertise. *State v. Reynolds, supra.* The trial court's determination about whether a witness qualifies as an expert under rule 702 will be upheld on appeal unless the court's finding is clearly erroneous. *State v. Reynolds, supra.*

The Nebraska Supreme Court has adopted the *"Frye* test" for determining the admissibility of scientific evidence. See *State v. Reynolds, supra.* The court has recognized the appropriate test is the following: " '[W]hile courts will go a long way in admitting expert testimony deduced from a well–recognized scientific principle or discovery, the thing from which the deduction is made must be sufficiently established to have gained general acceptance in the particular field in which it belongs.' " 235 Neb. at 681, 457 N.W.2d at 417–18 (quoting *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013 (1923)). Under the *Frye* standard, the reliability necessary for admissibility of an expert's testimony, including an expert opinion, which is based on a scientific principle or a technique or process which utilizes a scientific principle, depends on the general acceptance of the principle, technique, or process in the applicable scientific community. *State v. Reynolds, supra.* See, also, *Frye v. United States,* 54 App. D.C. 46, 293 F. 1013 (1923); *State v. Carter,* 246 Neb. 953, 524 N.W.2d 763 (1994) (reaffirming use of *Frye* test in Nebraska despite U.S. Supreme Court's modification of test in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)).

If the trial court determines that a witness is qualified to provide an expert opinion pursuant to rule 702, the court must next determine whether the expert's opinion will assist the trier of fact. See *State v. Reynolds, supra.* This determination

initially requires a determination of relevance. "It appears axiomatic that irrelevant evidence will not 'assist the trier of fact.' " 235 Neb. at 682, 457 N.W.2d at 418.

The Nebraska Supreme Court has recognized that most trial court rulings excluding expert testimony can be explained as findings by the court that the issue is inappropriate for expert resolution, either because the expert is not needed for the jury to resolve the issue or because the expert is incapable of rendering meaningful assistance. *State v. Reynolds, supra*. The trial court's determination of whether an expert's opinion testimony will be helpful to the jury or assist the trier of fact in accordance with rule 702 is a determination involving the discretion of the trial court, whose ruling on the admissibility of an expert's testimony or opinion will be upheld on appeal unless the trial court abused its discretion. *State v. Reynolds, supra*. See, also, *State v. Welch*, 241 Neb. 699, 490 N.W.2d 216 (1992); *State v. White*, 2 Neb. App. 106, 507 N.W.2d 654 (1993); *State v. Maggard*, 1 Neb. App. 529, 502 N.W.2d 493 (1993).

The "abuse of discretion" standard of review is applicable in reviewing this determination because

"[T]he trial judge has a hands-on familiarity with the nuances of the case—nuances which may not survive transplantation into a cold appellate record. Thus, the [trial] court's assessment of what will or will not assist the jury is entitled to considerable deference in the Rule 702 milieu."

*State v. Reynolds*, 235 Neb. at 684, 457 N.W.2d at 419 (quoting *U.S. v. Hoffman*, 832 F.2d 1299 (1st Cir. 1987)).

The Supreme Court has further held that a trial court may exclude an expert's opinion which is nothing more than an expression of how the trier of fact should decide the case or what result should be reached on an issue to be resolved by the trier of fact. *State v. Reynolds, supra*. See, also, *State v. Maggard, supra*. Therefore, when an expert's opinion on a disputed issue is merely a conclusion which may be deduced equally well by the trier of fact with sufficient evidence on the issue, the expert's opinion is superfluous and does not assist the

trier of fact in determining the factual issue or understanding the evidence. *State v. Reynolds, supra.*

### (c) Application to Case

On the record before us, it is unclear on what grounds the trial court decided to grant the State's motion in limine. We are unable to discern whether the trial court initially determined that Dr. Underwager was not qualified to provide an expert opinion or whether the trial court determined that Dr. Underwager's testimony would not assist the trier of fact. On either possible ground, the conclusion would not merit reversal.

The State argued that Dr. Underwager was not qualified to offer an expert opinion on whether or not Case's statements to Sergeant Hilliges were voluntary. At the hearing on the motion in limine, Case presented no evidence in support of Dr. Underwager's qualifications as an expert. Even if we consider the court's allowance and ruling on Case's offer of proof at trial as a reconsideration of the motion in limine, there remains no indication that Dr. Underwager had any knowledge or training in determining the "voluntariness" of Case's statements as that term is used in a legal sense. Dr. Underwager testified that his focus was on "psychological–type" coercion, but he did not testify in any manner concerning whether any of Hilliges' actions overbore Case's free will, as is required for a determination that the statement was coerced in a legal sense and therefore involuntary.

The evidence was not adequate to demonstrate that Dr. Underwager's techniques may be used to determine whether a person's previous statements were coerced or involuntary. Accordingly, if the trial court determined that Dr. Underwager was not qualified to provide an expert opinion under the requirements of rule 702, we cannot say that finding was clearly erroneous.

Additionally, if the trial court's decision to exclude Dr. Underwager's testimony was based on a finding that the testimony would not assist the trier of fact, we cannot say that the court abused its discretion. Case sought to have Dr. Underwager testify that legal standards of voluntariness concerning statements made to police officers had not been met.

Case failed to establish, however, that Dr. Underwager was in any better position than the jury to make that determination. See *State v. Reynolds, supra.* Case presented no evidence at the hearing on the motion in limine, and Dr. Underwager's testimony, as evidenced by Case's offer of proof at trial, would have been nothing more than an expression of how the trier of fact should resolve the issue of voluntariness. See *id.* Accordingly, the trial court did not abuse its discretion in excluding Dr. Underwager's testimony.

## VI. CONCLUSION

Because we find that the trial court did not err in denying Case's request for bill of particulars, in denying Case's motion to suppress, or in granting the State's motion in limine, we affirm.

AFFIRMED.